UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Leah Findlator,

      Plaintiff,

v.　　　　　　　　　　　　　　　　　　　　　　Civil No. 17-5088 (JNE/ECW)
　　　　　　　　　　　　　　　　　　　　　　　ORDER
Allina Health Clinics,

      Defendant.


Defendant Allina Health Clinics ("Allina") terminated Plaintiff Leah Findlator following an altercation between Findlator and her colleague, Leah Baruch. ECF No. 4. Findlator filed a complaint against Allina asserting three claims arising from this termination: (1) race and national origin discrimination in violation of Title VII of the Civil Rights Act of 1964; (2) race and national origin discrimination in violation of the Minnesota Human Rights Act; and (3) intentional inflict of emotional distress. *Id.*

Allina now moves for summary judgment on all claims. Findlator opposes the motion. The Court grants summary judgment.

## BACKGROUND

Findlator is "a black woman from the United Kingdom." ECF Nos. 4 at 1; 26 at 17. She began working for Allina as a Laboratory Technician in August of 2012. From 2012 until December of 2016, Allina never disciplined Findlator and generally gave her positive performance evaluations.

1

"Immediately [after Findlator] started working for Allina, she began having problems with another Laboratory Technician, Leah Baruch," who is white. ECF No. 4. Findlator alleges that Baruch was regularly disrespectful, that their interactions were "often heated and aggravating," and that Baruch had a history of interpersonal conflict with others. *Id.* Findlator raised this issue with her supervisors on multiple occasions.

On December 2, 2016, Findlator and Baruch were both working in the lab when Baruch asked Findlator about the status of a blood sample. The question triggered a heated exchange. Baruch then exited the lab for a patient care area occupied by both patients and Allina staff. Findlator followed Baruch and they continued to argue in front of others. Baruch took off her lab coat and threw it at Findlator. Baruch then picked up the coat and threw it again. The coat never hit Findlator. The two came face-to-face while arguing and Findlator pushed Baruch.[1] Other Allina employees then interceded to separate the two and escort them to different areas of the clinic.

Over the next few days, human resources investigated the incident and interviewed six employees as well as both Findlator and Baruch. On December 6, 2016, human resources released reports on the investigation.

---

[1] After her termination, Findlator claimed that the coat hit her. But in her Amended Complaint before this Court, she asserts that the coat did not hit her. ECF No. 4 at 5. Regardless, Findlator never alleges that at the time of her termination, Allina believed the coat hit her. It is therefore undisputed that Allina believed that Findlator made physical contact with Baruch while Baruch made no physical contact with Findlator.

2

The report on Baruch found that, "in a moment of anger," she "threw [her] lab coat." ECF No. 22-1 at 3. It described her conduct as "completely inappropriate," "unprofessional," and "unacceptable." *Id.* It concluded that she had violated Allina's Respectful Workplace policy and its Commitment to Care. The report issued her a "final written warning" and suspension. *Id.*

The report on Findlator stated: "in a moment of anger, you put both hands on your co-worker['s] chest and pushed her backwards." *Id.* at 2. The report explained that "Allina Health has a zero tolerance for violence." *Id.* It continued: "when you pushed your coworker that is considered an act of violence and is simply unacceptable and will not be tolerated." *Id.* Indeed, Allina's Violence-Free Workplace policy reads:

> No individual may engage in any verbal or physical conduct which causes or threatens to cause harm to persons or property. This includes conduct which has the effect of threatening others, regardless of the intent of the individual.

*Id.* at 78. The policy warns: "If you violate the Violence-Free Workplace policy, you will be subject to corrective action." *Id.*

Allina's report on Findlator ultimately concluded that she violated the Respectful Workplace policy, the Commitment to Care policy, and the Violence-Free Workplace policy. For her actions, Allina terminated her employment. ECF No. 22-1 at 2.

Through her union, Findlator filed a grievance to challenge her termination. "She argued that she was terminated because of her race and national origin," as allegedly "evidenced by the fact that she and Ms. Baruch violated the Violence-Free Workplace

3

Policy, and therefore, should have received the same discipline." ECF No. 21 at 6. She also claimed that Baruch "accused her of being in a gang." *Id.* Following further review of the incident, Allina determined that race and national origin did not motivate the decision to terminate Findlator. ECF No. 27-8 at 32. To justify the different treatment of the two employees, Allina reasoned: "Allina's position is that the throwing of the lab coat across a desk in the general direction of another employee is not the same level of severity as putting your hands on someone's shoulders and pushing them back." *Id.* at 33. Allina denied the grievance. *Id.*

The union then pursued this matter in arbitration, the last step of the contractual grievance procedure. ECF No. 27-11 at 3. The arbitrator found that termination was unwarranted and ordered Findlator's reinstatement.[2] ECF No. 22-1 at 56-57. Findlator rejected Allina's subsequent offer of reinstatement. ECF No. 21 at 7.

Findlator then filed this suit alleging discrimination and intentional infliction of emotional distress. ECF No. 4.

---

[2] The arbitrator's analysis is irrelevant to the claims before the Court. The arbitrator analyzed Findlator's termination using a "just cause" standard, which focuses on the "reasonableness" of the termination. ECF No. 22-1 at 50. The "just cause" standard does not apply to the discrimination and intentional infliction of emotional distress claims at issue here. In any event, the arbitrator's decision does not bind this Court. *See Jeseritz v. Potter*, 282 F.3d 542, 546 (8th Cir. 2002) (explaining that court "is not bound by the arbitrator's finding that removal was too harsh a penalty for" the employee's misconduct).

## STANDARD OF REVIEW

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A factual dispute is material if its resolution will affect the outcome of the suit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

The Court will grant summary judgment when the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). "The mere existence of a scintilla of evidence in support of the [the nonmoving party's] position will be insufficient." *Anderson*, 477 U.S. at 252. That said, in making these determinations, the Court must draw all reasonable inferences from the evidence in favor of the nonmoving party. *Id.* at 255.

## DISCUSSION

For the reasons below, the Court grants summary judgment in favor of Allina on all of Findlator's claims.

### I. Race and National Origin Discrimination.

"[T]o survive a motion for summary judgment on a discrimination claim, a plaintiff must either present admissible evidence directly indicating unlawful

discrimination, or create an inference of unlawful discrimination under the burden-shifting framework established in *McDonnel Douglas Corp. v. Green*." [3] *Rooney v. Rock-Tenn Converting Co.*, 878 F.3d 1111, 1115 (8th Cir. 2018) (citing *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04 (1973)). Findlator insists that she offers direct evidence of discrimination. Alternatively, she argues that she offers sufficient evidence to create an inference of discrimination under the *McDonnell Douglas* framework. The Court disagrees.

A. Direct evidence of discrimination.

"Direct evidence of discrimination" is evidence of "a specific link between the alleged discriminatory animus and the challenged decision, sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motivated the adverse employment action." *Hutton v. Maynard*, 812 F.3d 679, 683 (8th Cir. 2016) (citation omitted). "Direct evidence encompasses comments . . . indicating discriminatory intent, where those comments are made by people with decision-making authority." *Id.* (citation omitted). Direct evidence, however, does not include "stray remarks in the workplace" and "statements by nondecisionmakers." *Moody v. Vozel*, 771 F.3d 1093, 1096 (8th Cir. 2014) (citation omitted). Findlator contends that she has direct evidence.

---

[3] It is undisputed that "[t]he same analysis applies to both [Minnesota Human Rights Act claims] and Title VII claims." *Torgerson v. City of Rochester*, 643 F.3d 1031, 1043 (8th Cir. 2011) (citation omitted).

First, she explains that Allina's Human Resources Director and decisionmaker on the termination, Kimberly Drennen, "knew about Ms. Baruch accusing Plaintiff of being in a gang." ECF No. 26 at 15. But Baruch's beliefs or comments about Findlator being in a gang constitute "statements by nondecisionmakers." *Moody*, 771 F.3d at 1096. They are not direct evidence.

Second, Findlator states that "Drennen and her team considered the race and national origin of [Findlator] when the decision to terminate her was made." ECF No. 26 at 14. As proof, she cites Drennen's deposition testimony:

> Q: Was the race of Leah Findlator and Leah Baruch considered in the decision to terminate Leah Findlator and suspend Leah Baruch?
> A: It was not considered in the decision to—for the final corrective action.
> Q: When was it considered?
> A: Any time there's an investigation around an employee, whether it is two employees or one employee, part of human resources' role is to look for—to exam [sic] anybody that might be in a protected class, whether it be age, religion, nationality, gender. We want to ensure that we are making a decision for the right reasons, that the facts that we have before us have to do with everything about the situation and the issue and not related to any other extraneous information, whether it's brown hair, female, regardless of what it is.
> Q: This particular case, what protected category did you consider?
> A: That Ms. Findlator is a black individual.
> Q: So that was race?
> A: Race.
> Q: What else?
> A: I think as we looked at protected classes we looked at religion and nationality and age. Race was the only thing that came up as a potential to ensure that we were making the right decision for the right reasons.
> Q: And you believe that the decision to terminate [Findlator] had nothing to do with her race?
> A: It did not have anything to do with her race.

ECF No. 27-5 at 7. This testimony evidences no "discriminatory animus" or "illegitimate criterion." *Hutton*, 812 F.3d at 683. To the contrary, Drennen states that Allina

7

considered race to ensure the nonexistence of racial discrimination. This is not direct evidence of discrimination.

Third, Findlator argues that both Baruch and she violated the Violence-Free Workplace policy. Allina, however, "did not charge Ms. Baruch for a violation of the policy but charged [Findlator] with violating the policy." ECF No. 26 at 14. Findlator insists that this proves a discriminatory animus. But finding a discriminatory animus here requires an inference that discrimination caused Allina to apply the Violence-Free Workplace differently to two employees who committed different acts. This inference is not "sufficient to support a finding by a reasonable fact finder that an illegitimate criterion actually motived the adverse employment action." *Hutton*, 812 F.3d at 683. So this too is not direct evidence.

Because Findlator offers no direct evidence of discrimination, she must satisfy the requirements of the *McDonnell Douglas* framework.

B.  The *McDonnell Douglas* Framework.

The *McDonnell Douglas* framework first requires Findlator "to establish a prima facie case of discrimination." *Lake v. Yellow Transp., Inc.*, 596 F.3d 871, 873 (8th Cir. 2010). "To establish a prima facie case, [Findlator] 'must show (1) [she] is a member of a protected class, (2) [she] met [her] employer's legitimate expectations, (3) [she] suffered an adverse employment action, and (4) the circumstances give rise to an

inference of discrimination (for example, similarly situated employees outside the protected class were treated differently)." *Id.* at 874.

Satisfaction of these elements "creates a rebuttable presumption of discrimination," which shifts the burden "to the defendant to provide a legitimate, nondiscriminatory reason" for its employment decision. *Id.* at 873. "'If the defendant provides such a reason, the presumption disappears, and the burden shifts back to the plaintiff to show that the proffered reason was pretext for discrimination." *Id.* at 873-74 (citation omitted).

Allina offers a legitimate, nondiscriminatory reason for terminating Findlator: she "placed her hands on and pushed another employee during an altercation that occurred in a patient area." ECF No. 21 at 11. When, as here, "an employer has articulated a legitimate reason for its actions, it is permissible for courts to presume the existence of a prima facie case and move directly to the issue of pretext." *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007).

The Court does so and proceeds to determining whether Findlator offers sufficient evidence that Allina's "proffered reason was pretext for discrimination." *Lake*, 596 F.3d at 873-74. Findlator "may show pretext, among other ways, by showing that an employer (1) failed to follow its own policies, (2) treated similarly-situated employees in a disparate manner, or (3) shifted its explanation of the employment decision." *Id.* at 874. Findlator argues that Allina treated her and Baruch, similarly situated employees, in a disparate manner.

9

"At the pretext stage, the test for whether someone is sufficiently similarly situated, as to be of use for comparison, is rigorous." *Edwards v. Hiland Roberts Dairy Co.*, 860 F.3d 1121, 1126 (8th Cir. 2017) (citation omitted). "The employees used for comparison" must be "similarly situated in all relevant respects," such that they "must have dealt with the same supervisor, have been subject to the same standards, and engaged in the same conduct without any mitigating or distinguishing circumstances." *Id.* (citation omitted).

Findlator claims that Allina's "Violence Free Workplace policy [makes no distinction] between physical violence"—her act of shoving Baruch—"and a threat of physical violence"—Baruch's act of throwing a coat. ECF No. 26 at 21. Findlator concludes that the two were therefore similarly situated under Allina's policies. Despite this similarity, Allina suspended Baruch and terminated Findlator. The alleged disparate treatment of similarly situated employees, claims Findlator, proves that Allina's proffered reason was pretext for discrimination.

But Findlator and Baruch were not similarly situated under Allina's policies. Findlator is correct that the Violence-Free Workplace policy is silent as to any distinctions between varying types of violence and threats of violence. The policy, however, limits neither Allina's freedom to make such distinctions nor Allina's freedom to select a corrective action that is proportional to the severity of the policy violation. *See* ECF No. 22-1 at 78 (stating simply that violators "will be subject to corrective action"). Allina chose to distinguish violent acts and threats by severity. It concluded that shoving

10

a coworker is more serious than throwing a coat in the direction of a coworker. Allina thus recognized the "distinguishing circumstances" of the two forms of misconduct, determined that the two employees were not therefore similarly situated, and chose a more drastic punishment for the employee who committed the more egregious act. *Edwards*, 860 F.3d at 1126 (explaining that "distinguishing circumstances" prevent finding employees "similarly situated"). This was permissible under Allina's Violence-Free Workplace policy. Findlator offers no convincing reason to the contrary. And so she fails to demonstrate that Baruch and she were similarly situated under Allina's policies and, by extension, that Allina's proffered reason was pretext.

Next, Findlator explains that, although the parties agree that both Baruch and Findlator violated the Violence-Free Workplace policy, Allina's report only charged Findlator with the violation. Findlator maintains that this "selective application" of the Violence-Free Workplace policy shows a discriminatory motive establishing pretext. ECF No. 26 at 21-22.

Yet Allina's rationale for terminating Findlator and suspending Baruch would apply with equal force even had Baruch's report also listed a violation of the Violence-Free Workplace policy. Allina could have terminated Findlator for her more serious violation and suspended Baruch for her less serious violation. As a result, omitting the policy violation from Baruch's report furthered no discriminatory scheme to terminate Findlator. Accordingly, Allina's failure to charge Baruch with a violation of the policy in the report constitutes, at most, a mere "scintilla of evidence" of discriminatory motive.

11

*Anderson*, 477 U.S. at 252 (deeming a "scintilla of evidence" insufficient to survive summary judgment). This is not enough to satisfy Findlator's "rigorous" burden of showing that Allina's proffered reason was pretext for discrimination.

    C.    <u>Conclusion.</u>

Findlator offers no direct evidence of discrimination and she offers insufficient evidence to create an inference of discrimination under the *McDonnell Douglas* framework. The Court therefore dismisses her claims for race and national origin discrimination in violation of Title VII and the Minnesota Human Rights Act.

    II.    **<u>Intentional Infliction of Emotional Distress.</u>**

"To prevail on a claim for [intentional infliction of emotional distress] under Minnesota law, a plaintiff must establish (1) the alleged conduct is extreme and outrageous, (2) the conduct is intentional or reckless, (3) the conduct causes emotional distress, and (4) the distress is severe." *Doku v. Hennepin Health Care Sys., Inc.*, 09-cv-353, 2009 WL 1586709, at *3 (D. Minn. June 4, 2009) (citing *Hubbard v. United Press Int'l, Inc.*, 330 N.W.2d 428, 438-39 (Minn. 1983)). In fact, "the conduct in question 'must be so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community.'" *Id.* (quoting *Hubbard*, 330 N.W.2d at 439).

No reasonable jury could find that the termination of Findlator for shoving a coworker was "so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." *Id.* Findlator therefore "fails to make a showing

12

sufficient to establish" the elements of her claim and the Court grants Allina's motion for summary judgment. *Celotex Corp.*, 477 U.S. at 322.

## **CONCLUSION**

Based on the foregoing, and all the files, records, and proceedings herein, IT IS ORDERED THAT:

1. Defendant Allina Health Clinics' motion for summary judgment [ECF No. 19] is GRANTED.

2. This action [ECF No. 4] is DISMISSED WITH PREJUDICE.

LET JUDGMENT BE ENTERED ACCORDINGLY.

Dated: December 17, 2018

                                                                   s/ Joan N. Ericksen
                                                                    JOAN N. ERICKSEN
                                                                    United States District Judge